UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X

WESTCHESTER SURPLUS LINES INS. CO.,

                        Plaintiff,

      -against-

ARCH SPECIALTY INS. CO.,

                Defendant/Third-Party Plaintiff,

    -against-

ENERGY CONSERVATION GROUP OF AMERICA,
INC., PENN-AMERICA INS. CO., and CONSTRUCTION
CONTRACTING AND MAINTENANCE, LLC,

              Third-Party Defendants.

----------------------------------------------------------------------X

Case No. 1:17-cv-00216

DECLARATION OF
JEFFREY S. COOPER IN
OPPOSITION TO
DEFENDANT'S
MOTION FOR
SUMMARY JUDGMENT

I, JEFFREY S. COOPER, declare as follows:

      1.     I am employed by EPOX-Z CORPORATION ("EPOX-Z") as the chief financial officer and part owner. I am fully familiar with the facts set forth herein.

      2.     Based upon my personal knowledge of work performed and agreements entered into, the document attached as Exhibit "A" is a true and correct copy of a standard Reseller Agreement that EPOX-Z would enter into with a "reseller".

      3.     Further, Exhibit "A" is a true and correct copy of a Reseller Agreement kept and maintained as a business record in the ordinary course of business.

{N1236519.1 }

1

4.    It is my belief that Exhibit "A" is the final draft of the Reseller Agreement entered into between ENERGY CONSERVATION GROUP OF AMERICA, INC. ("ECGOA") and EPOX-Z entered into on or around May 16, 2012.

5.    A true and accurate copy of emails between Howard Ehrenshaft and Jeffrey Cooper, dated January 11, 2013 and January 14, 2013, and containing a forwarded email from Jeffrey Cooper to Howard Ehrenshaft and Kevin O'Donnell, and kept and maintained as a business record in the ordinary course of business, are collectively attached hereto as Exhibit "B."

6.    A true and accurate copy of emails between Peter Engelmann and Jeffrey Cooper, dated January 31, 2013 and February 25, 2013, and kept and maintained as a business record in the ordinary course of business, are collectively attached hereto as Exhibit "C."

7.    A true and accurate copy of an email between Peter Engelmann and Jeffrey Cooper dated March 25, 2013, and bates stamped Westchester 204, and a true and accurate copy of an email between Howard Ehrenshaft and Jeffrey Cooper, dated April 10, 2013, and kept and maintained as a business record in the ordinary course of business, are collectively attached hereto as Exhibit "D."

8.    A true and accurate copy of an email between Brad Johnston and AD Validation, dated May 6, 2013, and kept and maintained as a business record in the ordinary course of business, is attached hereto as Exhibit "E."

9.    A true and accurate copy of an email between Jeffrey Cooper and Howard Ehrenshaft dated January 16, 2013, and kept and maintained as a business record in the ordinary course of business, is attached hereto as Exhibit "F."

I declare under the penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct. Executed this 16 th day of January, 2018, at Norwell, MA _____ .

_____
JEFFREY S. COOPER

# EXHIBIT A

# EPOX-Z Corporation

## RESELLER AGREEMENT

This Agreement made as of May 16, 2012, by and between EPOX-Z Corporation ("EPOX-Z"), a Massachusetts Company with its principal place of business at 82 Bowker Street, Norwell, MA 02061, and Energy Conservation Group Of America ("Reseller") and also known as ECGOA, with his principal place of business at 345 Fort Salonga Road Nothport, NY 11768.

## 1. DEFINITIONS

For purposes of this Agreement, the following terms shall have the meanings set forth below:

"Customer" means any purchaser of Products or Services from Reseller.

"Products" means the EPOX-Z construction materials and supplies described on Exhibit A to this Agreement, and all related documentation and user guides.

"Trademarks" means the trademarks and service marks listed on Exhibit B to this Agreement and any other names, designations, trademarks, and service marks used from time to time by EPOX-Z in connection with the Products that are provided to Reseller by EPOX-Z for use in connection with this Agreement. As of the Effective Date, Exhibit B lists EPOX-Z's then-current trademarks and service marks, which may be amended from time to time by EPOX-Z in its sole discretion.

## 2. ESTABLISHMENT OF RESELLER RELATIONSHIP

2.1 APPOINTMENT. Subject to the terms and conditions of this Agreement, EPOX-Z hereby appoints Reseller, and Reseller hereby accepts such appointment and agrees to act, as a non-exclusive reseller of the Products during the term of this Agreement.

2.2 PROMOTION OF PRODUCTS. Reseller will use its best efforts to promote and maximize the sales of the Products. Reseller agrees to:
a) in all correspondence or other dealings relating to or concerned with the Products, clearly indicate that it is acting as a reseller and not as an agent of EPOX-Z, or an author or developer of the Products; and
b) inform EPOX-Z promptly of any information received by Reseller which is likely to be of interest, use or benefit to EPOX-Z relating to marketing, support or development of the Products.

2.3 PROVISION OF MARKETING MATERIALS. EPOX-Z will provide to Reseller, at no cost to Reseller, a limited amount of hard copies of English-language advertising and marketing materials generally released by EPOX-Z to its resellers relating to the Products ("Marketing Materials") for distribution and use to potential Customers. Reseller may use then-current versions of any electronic Marketing Materials delivered to Reseller by EPOX-Z, provided that Reseller shall not use or distribute any Marketing Materials identified as rescinded by EPOX-Z.

2.4 COMMUNICATION. The parties shall communicate regularly during the term of this Agreement regarding the status of their efforts to market the Products, and shall work together to develop and maintain a 90-day action plan relating to their obligations under this Agreement. The parties shall meet at least twice per year to assess the results of their activities under this Agreement and the status of their relationship.

2.5 TRAINING. EPOX-Z may from time to time conduct training at an EPOX-Z designated location relating to the Products. Reseller will use commercially reasonable efforts to ensure that all appropriate personnel attend and actively participate in such training sessions. Reseller will be responsible for travel and lodging expenses incurred by its personnel in attending such training sessions. If, at Reseller's request, training sessions are held otherwise than at EPOX-Z's facilities, Reseller shall reimburse EPOX-Z for all additional costs and expenses associated with provision of the training outside of such facilities.

**2.6 DEMONSTRATION PRODUCTS.** If EPOX-Z provides Reseller with a demonstration copy or sample of any Product (which shall be at EPOX-Z's sole discretion), Reseller shall keep such Product in accordance with this Agreement. EPOX-Z will at all times retain title to such Products, and Reseller shall not allow or permit any liens or encumbrances to attach to such Products. Reseller shall return any such Products to EPOX-Z upon request.

**3.   LICENSES.**

**3.1 GRANT OF LICENSE.** Subject to the terms and conditions of this Agreement, EPOX-Z hereby grants to Reseller, and Reseller hereby accepts, the following non-exclusive, nontransferable licenses:
a) A license to sell the Products in accordance with this Agreement; and
b) A license to use the Trademarks solely in connection with the marketing and distribution of the Products in compliance with this Agreement. Reseller will not use the Trademarks or confusingly similar marks in connection with any goods or services other than as specified by EPOX-Z. Specifications for use of the Trademarks are listed in Exhibit B, and may be amended by EPOX-Z in its sole discretion from time to time. All rights in the Trademarks, registrations of the Trademarks, applications for such registrations, and all goodwill associated therewith, shall remain at all times the sole property of EPOX-Z and its licensors, and all use of the Trademarks shall inure to the benefit of EPOX-Z and its licensors. Reseller agrees to assist in the registration of the Trademarks in the name of EPOX-Z or its licensors, as the case may be, in renewal and maintenance of such registrations and in such recording of Reseller as a user of the Trademarks as EPOX-Z or its licensors may reasonably request. Any costs incurred by Reseller and approved in advance by EPOX-Z in connection with such registration, maintenance or recording shall be reimbursed by EPOX-Z. Reseller shall not register any Trademarks in its own name or permit any third party to register any Trademarks in such party's name. Whenever Reseller uses the Trademarks in any manner, Reseller shall clearly indicate EPOX-Z's or its licensors' ownership thereof, as the case may be. Notwithstanding the foregoing, Reseller's use of the Trademarks on or in connection with any advertising, materials, instruction or other material not provided by EPOX-Z shall be subject to the prior written approval of EPOX-Z.

**3.2 LIMITATIONS.** In no event should the licenses set forth in this Section 3 be construed to grant to Reseller a right to make copies of the Products and Reseller agrees that it will not, and it will not permit or assist any Customer to:
a) Copy the Products or any part thereof,
b) Reverse engineer, or disassemble the Products, or in any other way attempt to generate or access the trade secrets of the Products,
c) Modify or make works derived from the Products, or
d) In any way use the Products to develop a product or service competitive with any Product.

**4.   ORDERS AND DELIVERY OF PRODUCTS.**

**4.1 PRICE.** Reseller shall have the sole right to establish retail prices for its distribution of the Products to Customers.

**4.2 COST OF PRODUCT TO RESELLER.** Reseller shall pay the prices for the Products as set forth on Exhibit A, as modified by EPOX-Z from time to time on not less than 30 days' notice. Each Product shall be deemed to be accepted by Reseller, and Reseller's obligation to pay the applicable price for such Product shall accrue, upon delivery of such Product to Reseller or Reseller's agent for delivery. In no event shall Reseller's payment obligations to EPOX-Z be contingent upon the Customer's acceptance of the Product or Reseller's receipt of payment from the Customer.

**4.3 ORDERS.** Reseller shall order Products for Customers by means of a purchase order addressed to EPOX-Z from Reseller (the "Order"). Each Order shall specify the Products being ordered, the applicable price determined as set forth in Exhibit A, and if being shipped directly to a customer, the Customer for whom the Products are being ordered, and the Customer location to which the Products are to be delivered and installed. Orders shall be in writing and are subject to acceptance by EPOX-Z as set forth below. Any terms or conditions appearing on the face or reverse side of any Order, acknowledgment or confirmation from Reseller that are different from or in addition to

the terms and conditions of this Agreement or any EPOX-Z confirmation shall not be binding on EPOX-Z unless EPOX-Z expressly agrees in a separate writing to be bound by such separate or additional terms and conditions.

4.4 ACCEPTANCE OF ORDERS.  EPOX-Z may accept or reject any Order, in whole or in part, at its discretion, provided that no Order will be unreasonably rejected.  Reseller is neither expressly nor impliedly authorized to enter into written or oral contracts or agreements of any nature on behalf of EPOX-Z.  Upon receipt of an Order from Reseller, EPOX-Z shall accept or reject the Order and notify Reseller of such acceptance or rejection within ten (10) business days of receipt of the Order.   For purposes of this Agreement a "business day" shall mean any day Monday through Friday with the exception of holidays observed by EPOX-Z.  Any Order accepted by EPOX-Z may not be cancelled by Reseller without the written consent of EPOX-Z.

4.5 SHIPMENT.  EPOX-Z shall use reasonable efforts to ship Products ordered by Reseller to Customers within thirty (30) business days after EPOX-Z accepts the corresponding Order from Reseller.  Unless Reseller specifically requests otherwise, EPOX-Z may make partial shipments of Reseller's Orders, to be invoiced separately and paid for when due.

4.6 FREIGHT; RISK OF LOSS.  All Products purchased by Reseller from EPOX-Z shall be shipped by EPOX-Z to the Reseller or Customer facility identified in the Order.   Reseller shall pay all shipping charges in connection with the delivery of the Products, including all freight charges, import or export fees, insurance premiums and costs, and all taxes and duties related to any shipments. All Products are shipped FOB EPOX-Z's facility.  All risk of loss or damage for all Products shipped to Reseller from EPOX-Z shall pass to Reseller upon delivery by EPOX-Z to the common carrier.

## 5.  PAYMENT TERMS.

### 5.1 PAYMENT.
Payment terms are:
a) Reseller shall pay EPOX-Z for Products upon placing of the order; unless otherwise agreed in writing by EPOX-Z with respect to a particular Customer
b) All payments from Reseller to EPOX-Z shall be made in United States Dollars and shall be paid fully net, without set-off, deduction or counterclaim.

5.2 DELINQUENT ACCOUNTS.  In the event that EPOX-Z agrees to terms other than payment upon placing of the order of the Products, and Reseller is delinquent in any amounts due to EPOX-Z, EPOX-Z shall have the right to cancel, suspend or delay any Orders placed by Reseller and accepted by EPOX-Z until Reseller has cleared its overdue account.  Interest shall accrue on any delinquent amounts owed by Reseller to EPOX-Z from the due date to the date of actual payment (whether before or after judgment) at a rate of one and one half percent (1.5%) per month, calculated on a daily basis, or the maximum rate permitted by applicable law, whichever is less.  In addition to any interest payments, Reseller shall also pay to EPOX-Z all costs and expenses, including reasonable attorneys' fees, incurred by EPOX-Z in collecting such delinquent amounts.

5.3  TAXES.  Prices for Products do not include any taxes or other governmental charges, including, without limitation, import or export duties, value-added, sales, use or privileges taxes, or excise or similar taxes levied by any government, now or hereafter enacted.  In EPOX-Z's discretion, any such taxes and charges may be added to the price for any Products or services or may be billed separately.  Reseller will, in any event, pay all such taxes and charges, on or before their due dates.  In the event EPOX-Z is required at any time to pay any such tax or charge, Reseller will reimburse EPOX-Z therefore promptly on demand.  If Reseller is required by law to make any deduction or to withhold from any sum payable to EPOX-Z by Reseller hereunder, then the sum payable by Reseller upon which the deduction or withholding is based shall be increased to the extent necessary to ensure that, after all deduction and withholding, EPOX-Z receives and retains, free from liability for any deduction or withholding, a net amount equal to the amount EPOX-Z would have received and retained in the absence of such required deduction or withholding.

## 6.  RECORDS, RIGHT TO AUDIT.

**6.1 RESELLER REPORTS.** Reseller shall report to EPOX-Z the following information:
a)  On a monthly basis, a rolling forecast of orders for each Product;
b)  Within ten (10) days after the end of each month, the total number of units of each Product remaining in Reseller's inventory at the end of the preceding month; and
c)  Such other information relating to the marketing and distribution of the Products as EPOX-Z shall reasonably request from time to time.

## 7.  PROPRIETARY RIGHTS AND CONFIDENTIALITY

**7.1 OWNERSHIP OF PRODUCTS.** EPOX-Z and its licensors shall retain all right, title and interest in the Products throughout the world, including without limitation, patent, copyright, trademark and trade secret rights. Except as expressly set forth in Section 3 of this Agreement, neither this Agreement, nor any license of Products hereunder shall be construed as granting to the Reseller any license or other right in or to any patent, copyright, trademark, trade secret or other proprietary right of EPOX-Z or its licensors.  Reseller shall not take any actions inconsistent with this Section 8.1.

**7.2 CONFIDENTIAL INFORMATION.**
a)  "Confidential Information" shall mean any information, in whatever form, received by Reseller from EPOX-Z that is identified as being proprietary or confidential to EPOX-Z, which a reasonable business person would regard as proprietary or confidential, or which might permit EPOX-Z or its customers to obtain a competitive advantage over those who do not have access to the information, provided, however that Confidential Information shall not include information which Reseller can demonstrate (i) is or becomes a part of the public domain through no act or omission of Reseller, (ii) was in Reseller's lawful possession prior to the disclosure by EPOX-Z and had not been obtained by Reseller either directly or indirectly from EPOX-Z or unlawfully from any third party, (iii) is lawfully disclosed to Reseller by a third party without restriction on disclosure, or (iv) is independently developed by Reseller.
(b)  Reseller hereby agrees that it will hold all Confidential Information in strict confidence and will use such Confidential Information only in accordance with the terms of this Agreement. Reseller shall limit the use of, and access to, the Confidential Information to its employees or agents whose use of or access to the Confidential Information is necessary to carry out Reseller's obligations under this Agreement. Reseller shall, by all appropriate means, prevent the unauthorized disclosure, publication, display or use of Confidential Information. Without limiting the generality of the foregoing, Reseller shall require all employees who shall have access to the Confidential Information to execute, prior to such access, a non-disclosure agreement providing for at least the same protection of the Confidential Information as is provided for by this Section 8.2. Reseller shall not alter or remove any trademark or copyright, restricted rights, limited rights, proprietary rights or confidentiality notice included in or affixed to the Products, any Marketing Materials or any Confidential Information and shall reproduce all such notices on any copies of the Products, Marketing Materials or Confidential Information made by Reseller in accordance with this Agreement.

## 8.  TERM AND TERMINATION.

**8.1 TERM.** This Agreement shall become effective upon the execution hereof by EPOX-Z and Reseller and shall continue for a period of one (1) year from the date first set forth above, unless earlier terminated in accordance with this Section 9.  This Agreement shall automatically renew for additional one year terms unless either party notifies the other in writing of its desire not to renew this Agreement at least ninety (90) days prior to the end of the then-current term.  Any termination of this Agreement pursuant to this Section 9 shall be effective without the giving of notice to, or any action by, any court or other governmental authority.

**8.2 TERMINATION FOR DEFAULT.** Either party may, at its option, terminate this Agreement effective upon notice to the other party if the other party has breached any provision of this Agreement and has failed to cure the breach within thirty (30) days of notice of the breach, unless such breach is a breach of Section 8 hereof, in which case termination shall be immediate if the breach can not be cured.  Notwithstanding the foregoing, if either party

shall fail to fulfill any of its material obligations hereunder and the other party has previously sent two notifications to such party pursuant to this Section of a failure to fulfill the same or similar obligations, the other party may, despite any remedy or cure of such breaches in the past by the defaulting party, terminate this Agreement by giving written notice of termination to the defaulting party, effective immediately upon its sending.

**8.3 TERMINATION FOR INSOLVENCY.** EPOX-Z may terminate this Agreement upon written notice to Reseller if Reseller is liquidated or dissolved, or becomes insolvent, or suffers a receiver, administrator or trustee to be appointed for it or any of its undertakings or assets, or is deemed to be unable to pay its debts or shall cease to carry on business, or makes a general assignment for the benefit of its creditors or institutes or has instituted against it any proceeding under any law relating to bankruptcy or insolvency or the reorganization or relief of debtors.

**8.4 EFFECT OF TERMINATION.** Upon termination of this Agreement for any reason, or upon expiration of this Agreement without renewal, Reseller's license rights shall terminate and Reseller shall immediately cease:
a) Any use, marketing or sale of the Products, and
b) Any use of the Trademarks or any Marketing Materials. Immediately upon any termination of this Agreement, Reseller shall pay to EPOX-Z all amounts owed to EPOX-Z. EPOX-Z shall ship any Products ordered by Reseller prior to the date of termination only upon payment in full for such Orders by Reseller.

**8.5 RETURN OF PROMOTIONAL MATERIAL AND CONFIDENTIAL INFORMATION.** Within five days after expiration or termination of this Agreement, Reseller shall promptly:
a) Submit to EPOX-Z a report including the information described in Section 7.1 of this Agreement for the period from the date of the last such report through the date of expiration or termination,
b) Return to EPOX-Z all copies of any Products, Confidential Information and Marketing Materials,
c) to the extent any Software, Confidential Information or Marketing Material can not be returned to EPOX-Z, erase or destroy all copies of such Software, Confidential Information and Marketing Materials under Reseller's control, including all copies that are fixed or running in machines controlled by Reseller, and
d) Have an authorized representative of Reseller certify in writing to EPOX-Z that Reseller has complied with the requirements of this paragraph.

**8.6 NO TERMINATION COMPENSATION.** The parties expressly agree that, to the extent permitted by applicable law, no damages, indemnity or termination benefits whatsoever (including, without limitation, any compensation for goodwill established by Reseller during the term of this Agreement or for any lost profits or expenses of Reseller) shall be due or payable to Reseller by reason of any termination of this Agreement in accordance with its terms, and Reseller expressly waives the application of any statute, law or custom to the contrary. Reseller will make every effort to minimize its costs and expenses related to this Agreement in the event this Agreement is terminated or not extended for an additional term.

**8.7 SURVIVAL OF TERMS.** The provisions of Sections 7, 8, 9.4-9.8, 10.2, 11, 12 and 13 and any payment obligations under Section 6 shall survive any termination of this Agreement.

**9. WARRANTIES AND DISCLAIMER.**

**9.1 WARRANTIES.** EPOX-Z represents and warrants to Reseller that:
a) Rights. EPOX-Z has the right to enter into this Agreement and grant to Reseller the rights granted herein; and
b) Limited Warranty. Except for the multi year Product warranties available to qualified roofing installations as outlined in the warranty applications, EPOX-Z warrants that the Products will conform to the descriptions in the applicable EPOX-Z user documentation for a period of one year from the date of delivery of the Products. EPOX-Z's entire liability and Reseller's sole remedy under this warranty shall be that EPOX-Z shall use reasonable efforts to repair or replace the nonconforming Product. If such effort fails, EPOX-Z shall refund to Reseller the price Reseller paid for the Product upon return of the nonconforming Product. Any replacement Products will be warranted for the remainder of the original warranty period or thirty (30) days from the date of receipt by Reseller, whichever is longer. EPOX-Z shall have no obligation under this limited warranty unless a claim for breach of warranty is made within ten (10) days after the end of the applicable warranty period.
(c) Exceptions. EPOX-Z's limited warranty set forth in Section 10.1(b) above is void if breach of the warranty has resulted from (i) accident, corruption, misuse or neglect of the Products; (ii) acts or omissions by someone other than EPOX-Z; (iii) combination of the Products with products, material or software not provided by EPOX-Z or not

intended for combination with the Products; or (iv) failure by Reseller to incorporate all updates to the Products available from EPOX-Z. EPOX-Z does not warrant that the Products or any of them will meet Reseller's or any Customer's requirements or that the operation of the Products will be error-free.

**9.2 DISCLAIMER OF WARRANTIES.** EXCEPT FOR THE EXPRESS WARRANTIES SET FORTH IN SECTION 10.1 ABOVE, EPOX-Z MAKES NO WARRANTY TO RESELLER REGARDING THE PRODUCTS PROVIDED BY EPOX-Z HEREUNDER. TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, THE EXPRESS WARRANTIES SET FORTH IN SECTION 10.1 ABOVE ARE THE ONLY WARRANTIES MADE BY EPOX-Z WITH RESPECT TO THE PRODUCTS PROVIDED BY EPOX-Z. EPOX-Z MAKES NO OTHER WARRANTIES, EXPRESS, IMPLIED OR ARISING BY CUSTOM OR TRADE USAGE, AND, SPECIFICALLY, MAKES NO WARRANTY OF NONINFRINGEMENT, MERCHANTABILITY, SATISFACTORY QUALITY OR FITNESS FOR ANY PARTICULAR PURPOSE. EPOX-Z'S EXPRESS WARRANTY SHALL NOT BE ENLARGED, DIMINISHED OR AFFECTED BY, AND NO OBLIGATION OR LIABILITY SHALL ARISE OUT OF, EPOX-Z RENDERING TECHNICAL OR OTHER ADVICE OR SERVICE IN CONNECTION WITH THE PRODUCTS.

## 10. LIMITATION OF LIABILITY.

**10.1** IN NO EVENT WILL EPOX-Z OR ITS LICENSORS HAVE ANY LIABILITY, WHETHER IN CONTRACT, TORT (INCLUDING NEGLIGENCE) OR OTHERWISE, ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT IN AN AMOUNT EXCEEDING THE AMOUNT PAID BY RESELLER TO EPOX-Z FOR THE APPLICABLE COPY OR COPIES OF THE PRODUCTS THAT GAVE RISE TO ANY CLAIM.

**10.2** IN NO EVENT SHALL EPOX-Z OR ITS LICENSORS BE LIABLE FOR SPECIAL, INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES, INCLUDING, WITHOUT LIMITATION, ANY DAMAGES RESULTING FROM LOSS OF DATA, LOSS OF PROFITS, LOSS OF BUSINESS OR LOSS OF GOODWILL ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT OR THE PERFORMANCE OF THE PRODUCTS, WHETHER OR NOT EPOX-Z OR ITS LICENSORS HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

**10.3** RESELLER ACKNOWLEDGES THAT EPOX-Z HAS SET ITS PRICES AND ENTERED INTO THIS AGREEMENT IN RELIANCE UPON THE LIMITATIONS OF LIABILITY AND DISCLAIMERS OR WARRANTY SET FORTH IN THIS AGREEMENT, AND THAT THE SAME FORM AN ESSENTIAL BASIS OF THE BARGAIN BETWEEN THE PARTIES. SUCH LIMITATIONS AND EXCLUSIONS SHALL APPLY NOTWITHSTANDING ANY FINDING OF FAILURE OF ESSENTIAL PURPOSE.

**10.4 RESELLER'S REPRESENTATIONS.** In no event shall Reseller make any representations to Customers or potential Customers about the Products that conflict in any way with the user documentation for the Products or any Marketing Materials provided by EPOX-Z.

## 11. INDEMNIFICATION AND INSURANCE.

**11.1 INDEMNIFICATION BY RESELLER.** Reseller shall indemnify and hold harmless EPOX-Z and its officers, directors, employees and agents, from and against any and all claims, demands, liabilities, losses, costs and expenses (including reasonable attorneys fees and any fees of consulting professionals) of any kind whatsoever levied against or incurred by EPOX-Z, its officers, directors, employees or agents, arising directly or indirectly out of conduct of Reseller outside the scope of this Agreement or Reseller's failure to perform any of its obligations under this Agreement.

**11.2 INFRINGEMENT INDEMNITY.** EPOX-Z shall defend or, at its option, settle, any claim, action or proceeding brought against Reseller that any Product infringes any United States patent, copyright or trade secret, and shall indemnify Reseller against all damages and costs finally awarded against Reseller in any such action or proceeding which results from any such claim. EPOX-Z shall have no liability under this Section 12.2 unless Reseller:
a) Promptly notifies EPOX-Z in writing of the claim, action or proceeding,

b) Gives EPOX-Z full authority, information and assistance to defend such claim, action or proceeding, and
c) Gives EPOX-Z sole control of the defense and settlement of such claim, action or proceeding and all negotiations relating thereto. If a Product or any part thereof becomes, or in EPOX-Z's opinion is likely to become, the subject of a valid claim of infringement or the like under any United States patent, copyright or trade secret law, EPOX-Z shall have the right, at its option and expense, either to obtain a license permitting the continued use of the Product or such part, to replace or modify it so that it becomes non-infringing, or to terminate the license granted herein to distribute the Product. EPOX-Z shall have no liability hereunder for any costs incurred or settlement entered into without its prior written consent. EPOX-Z shall have no liability hereunder with respect to any claim based upon:
a) The combination of the Product with other products not furnished by EPOX-Z or
b) Any addition or modification to the Product by any person or entity other than EPOX-Z.

**11.3** SECTION 12.2 SETS FORTH THE ENTIRE LIABILITY OF EPOX-Z, AND THE EXCLUSIVE REMEDY OF RESELLER, WITH RESPECT TO ANY CLAIM OF PATENT, COPYRIGHT OR TRADE SECRET INFRINGEMENT BY THE PRODUCTS, ANY PART THEREOF OR THE USE THEREOF, AND ARE IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, AND INDEMNITIES WITH RESPECT THERETO.

**11.4 INSURANCE.** During the term of this Agreement, Reseller shall take out and maintain general commercial liability and errors and omissions insurance, each with coverage of at least $1 million per occurrence and $2 million annual aggregate, with respect to its obligations under this Agreement. Reseller shall name EPOX-Z as additional insured with respect to such insurance, and shall provide EPOX-Z with certificates of insurance upon request.

## 12. GENERAL PROVISIONS.

**12.1 ENTIRE AGREEMENT.** This Agreement, including all Exhibits attached hereto, sets forth the entire agreement and understanding between the parties with respect to the subject matter hereof and supersedes all oral and written agreements and understandings relating thereto.

**12.2 MODIFICATION/WAIVER.** No waiver, alteration, modification, or cancellation of any of the provisions of this Agreement shall be binding unless made in writing and signed by each of the parties hereto. EPOX-Z's failure at any time or times to require performance of any provision hereof shall in no manner affect its right at a later time to enforce such provision. No remedy referred to in this Agreement is intended to be exclusive, but each shall be cumulative and in addition to any other remedy referred to herein or otherwise available at law, in equity or otherwise.

**12.3 NO SOLICITATION.** Reseller agrees that during the term of the Agreement and for one year after any expiration or termination of this Agreement, Reseller will not, directly or indirectly, recruit, solicit or induce (or attempt to do any of the foregoing), any specific employee or employees of EPOX-Z to terminate such employee's employment with, or otherwise cease their relationship with, EPOX-Z without the prior written consent of EPOX-Z.

**12.4 COMPLIANCE WITH LAWS.** Reseller acknowledges that the Products contain software and technical data that are subject to certain laws including, without limitation, the export control laws of the United States and prevailing regulations, orders or other restrictions which may be issued from time to time by the United States government concerning the exporting, importing and re-exporting of the Products and the direct products thereof. Reseller agrees to comply with all such applicable laws. Reseller shall, at its sole cost and expense, maintain in effect all permits, licenses and other consents necessary to the conduct of its activities hereunder.

**12.5 ASSIGNMENT.** This Agreement shall be binding upon, and inure to the benefit of, EPOX-Z and its legal representatives, successors and permitted assigns. Reseller shall not assign any of its rights (including by operation of law, change of control or otherwise) or delegate any of its duties hereunder, in whole or in part, to any third party, without the prior written consent of EPOX-Z.

**12.6 RELATIONSHIP OF THE PARTIES.** The relationship between EPOX-Z and Reseller shall be that of independent contractors. Nothing contained in this Agreement shall be construed to create a partnership, joint venture or agency relationship between the parties, and, notwithstanding anything else herein, neither party shall have the right to incur (and will not attempt to incur) any obligation or liability on behalf of the other party.

**12.7 SEVERABILITY.** If any of the provisions of this Agreement are determined to be invalid, illegal, or unenforceable by a court of competent jurisdiction, such provisions shall be severed from the Agreement, and the remaining provisions shall remain in full force and effect; provided, however, that with respect to any material provision so severed, the parties shall negotiate in good faith to achieve the original intent of such provision.

**12.8 APPLICABLE LAW.** This Agreement shall be governed by and construed and enforced in accordance with, the substantive laws of The Commonwealth of Massachusetts, without regard to its principles of conflicts of laws or the United Nations Convention on Contracts for the International Sale of Goods. The English language text of this Agreement shall be the authorized text for all purposes, despite translations or interpretations of this Agreement in other languages.

**12.9 NOTICES.** Any notices required or permitted under this Agreement shall be in English and in writing and shall be sufficiently given if:
a) Personally delivered,
b) Sent by Federal Express, DHL or other internationally recognized express courier service or
c) Sent by facsimile.
Any such notice shall be addressed to the party entitled or required to receive such notice at the addresses specified below or at such other address as either party may specify from time to time by written notice in accordance herewith. Any notices given hereunder shall be effective as of the earliest of:
a) Actual receipt or
b) twenty-four hours after transmission if sent by facsimile, or three days after depositing with the express courier service.

If to EPOX-Z:

     EPOX-Z
     82 Bowker Street
     Norwell, MA 02061

     Fax:    781-659-7688

If to Reseller:

     Mr. Howard Ehrenshaft
     ECGOA
     345 Fort Salonga Road
     Northport, NY 11768

**12.10 FORCE MAJEURE.** Neither party hereto shall be liable for any delays in the performance of any of its obligations hereunder due to causes beyond its reasonable control, including, but not limited to, fire, strike, war, riots, acts of any civil or military authority, acts of God, judicial action, unavailability or shortages of labor, materials or equipment, failure or delay in delivery by suppliers or delays in transportation.

**12.11 EQUITABLE RELIEF.** The covenants and agreements of Reseller in Sections 3.1(c), 3.2, and 8 hereof are of a special and unique character, and Reseller acknowledges that money damages alone will not reasonably or adequately compensate EPOX-Z for any breach of such covenants and agreements. Therefore, the parties expressly agree that in the event of the breach or threatened breach of any such covenants or agreements, in addition to other rights or remedies which EPOX-Z may have, at law, in equity, or otherwise, EPOX-Z shall be entitled to injunctive or other equitable relief compelling specific performance of, and other compliance with, the terms of such Section.

**12.12 CAPTIONS.** Captions used in this Agreement are solely for the convenience of the parties and do not constitute a part of this Agreement.

**12.13 ARBITRATION.** Any and all differences, disputes or claims arising under this Agreement, except for any differences, disputes or claims that may arise out of or in connection with the covenants and agreements in Sections 3.1(b), 3.2, and 8 hereof for which EPOX-Z may seek equitable relief, shall be finally resolved under the International Arbitration Rules of the American Arbitration Association in Boston, Massachusetts, by one or more arbitrators appointed in accordance with such Rules. Such arbitration shall be conducted in the English language. It is understood that the decision in such arbitration shall be binding on both parties and that a judgment upon any award rendered, which may include an award of damages, may be entered in any court having jurisdiction.

**12.14 PUBLICITY.** EPOX-Z reserves the right to disclose the existence of a contractual relationship between EPOX-Z and Reseller. Disclosure will include EPOX-Z-issued press releases which will generally include, but may not be limited to, a brief description of services provided or products used and the agreement date. EPOX-Z will provide Reseller with a copy of planned press releases in advance of their release. Reseller has the right to review and approve all press releases in advance of public disclosure, and must respond with comments within five (5) business days following receipt of a draft from EPOX-Z. Reseller agrees that its approval will not be unreasonably withheld or delayed.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement through their duly authorized representatives as of the date first written above.

Reseller (ECGOA)                           EPOX-Z Corporation

By: _____        By: _____

Title: _____        Title: _____

**EXHIBIT A**

**Products and Prices**

All Products sold by EPOX-Z Corporation in effect as of the date of this Agreement and as amended from time to time.

Cost is $80 per gallon for all products. Prices subject to change with 30 days prior written notice to Reseller.

**EXHIBIT B**

**Trademarks**


High Performance Coatings


The High Performance Cool Roof Coating

**EXHIBIT C**

**SALES REQUIREMENTS**

Reseller is required to sell a minimum of $250,000 of material during the one year term of the contract in order to be eligible for a renewal.

# EXHIBIT B

**Jeff Cooper**

| | |
|---|---|
| **From:** | Howard Ehrenshaft <hehrenshaft@zentergy.com> |
| **Sent:** | Monday, January 14, 2013 4:52 PM |
| **To:** | jeff@epox-z.com |
| **Subject:** | RE: Samples for Howard |

Jeff:

Thanks. Don't know how I missed it earlier If we find a roof that has
three layers can we coat?

Howard

Howard Ehrenshaft
The Zentergy Corporation
1 Hewitt Square #153
East Northport, NY 11731
Tel: 631-261-6277
Cell: 347-528-4237
Fax: 631-824-9176
Email: hehrenshaft@zentergy.com
www.zentergy.com

-----Original Message-----
From: jeff@epox-z.com [mailto:jeff@epox-z.com]
Sent: Monday, January 14, 2013 4:47 PM
To: Howard Ehrenshaft
Subject: Fw: Samples for Howard

This was the earlier email. It went to your ECGOA account.
------Original Message------
To: Howard Ehrenshaft
To: Kevin ODonnell
Subject: Samples for Howard
Sent: Jan 14, 2013 10:32 AM

Hi Kevin, Howard Ehrenshaft needs mod bit and metal samples. As you know I
am in DR and Darlene is in GA until 1/23. Can you please coordinate with
Howard what he needs and where to send them. The samples are in the boxes
near the kits at Bowker. Thank you. Jeff

Sent on the SprintR Now Network from my BlackBerryR

_____ Information from ESET NOD32 Antivirus, version of virus signature database 7888 (20130113) _____

The message was checked by ESET NOD32 Antivirus.

http://www.eset.com

_____ Information from ESET NOD32 Antivirus, version of virus signature database 10230 (20140809)

1

The message was checked by ESET NOD32 Antivirus.

http://www.eset.com

2

## Jeff Cooper

**From:** Howard Ehrenshaft <hehrenshaft@zentergy.com>
**Sent:** Friday, January 11, 2013 11:29 AM
**To:** Jeffery Cooper
**Subject:** Samples

Jeffery:

As discussed please send me contact (during Darlene's vacation) to order samples from.

Howard

*Howard Ehrenshaft*
*The Zentergy Corporation*
*1 Hewitt Square, #153*
*East Northport, NY 11731*
*Tel: 631-261-6277*
*Fax: 631-824-9176*
*Cell: 347-528-4237*
*E-mail: hehrenshaft@zentergy.com*
*www.zentergy.com*

This e-mail message, and any attachments to it, are for the sole use of the intended recipients, and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution of this email message or its attachments is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. Please note that any views or opinions presented in this email are solely those of the author and do not necessarily represent those of the company. Finally, while the company uses virus protection, the recipient should check this email and any attachments for the presence of viruses. The company accepts no liability for any damage caused by any virus transmitted by this email.

_____ Information from ESET NOD32 Antivirus, version of virus signature database 7888 (20130113)
_____

The message was checked by ESET NOD32 Antivirus.

http://www.eset.com

_____ Information from ESET NOD32 Antivirus, version of virus signature database 10230 (20140809)
_____

The message was checked by ESET NOD32 Antivirus.

http://www.eset.com

1

## Jeff Cooper

| | |
|---|---|
| **From:** | Howard Ehrenshaft <hehrenshaft@ecgoa.com> |
| **Sent:** | Wednesday, January 9, 2013 6:42 PM |
| **To:** | Dave Falt |
| **Subject:** | Follow Up |
| **Attachments:** | economic_and_environmental_benefits_of_cool_roof_coatings.pdf; solar_pv_and_cool_roof_coatings.pdf; EPOX-ZNRGDataSheet.pdf |

Dave:

As discussed I will be at your facility on Feb. 4th at 11 AM. Attached is product information for you to look at. My contact information is shown below. Please call if you have any questions.


Howard

Howard Ehrenshaft
The Energy Conservation Group of America
345 Fort Saonga Road, Northport, NY 11768
Phone: 800-662-6307
Cell: 347-528-4237
Fax: 631-593-5466
Email: hhrenshaft@ecgoa.com


This e-mail message, and any attachments to it, are for the sole use of the intended recipients, and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution of this email message or its attachments is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. Please note that any views or opinions presented in this email are solely those of the author and do not necessarily represent those of the company. Finally, while the company uses virus protection, the recipient should check this email and any attachments for the presence of viruses. The company accepts no liability for any damage caused by any virus transmitted by this email.


_____ Information from ESET NOD32 Antivirus, version of virus signature database 7879 (20130110)
_____

The message was checked by ESET NOD32 Antivirus.

http://www.eset.com


_____ Information from ESET NOD32 Antivirus, version of virus signature database 9421 (20140213)
_____

The message was checked by ESET NOD32 Antivirus.

Westchester 200

# EXHIBIT C

**Jeff Cooper**

| | |
|---|---|
| **From:** | peter engelmann <pjengelmann@gmail.com> |
| **Sent:** | Monday, February 25, 2013 11:14 AM |
| **To:** | jeff@epox-z.com |
| **Subject:** | Meeting |

Jeff
When are you
Available for the town inspection this week?
Pete

Sent from my iPhone

_____ Information from ESET NOD32 Antivirus, version of virus signature database 8050 (20130225) _____

The message was checked by ESET NOD32 Antivirus.

http://www.eset.com

1

Westchester 201

# Jeff Cooper

| | |
|---|---|
| **From:** | Peter Engelmann <pengelmann@ecgoa.com> |
| **Sent:** | Thursday, January 31, 2013 11:03 AM |
| **To:** | jeff@epox-z.com |
| **Subject:** | Re: Infra red camera |

Jeff,

Do you have any experience in working at stony brook hospital or the SUNY there? Is it union? Competitive state bid?
Want to purchase camera. May I reach out to Dennis Cohen for advice?
We also would like to you to lunch next week if your on Island. We've got some big stuff cooking.

Peter
Sent from my iPad

On Jan 30, 2013, at 3:28 PM, jeff@epox-z.com wrote:

> Cameras start at $4,500 go up to 17K. Dennis Cohen from National Roofing can do Infra red but you are better off buying a camera and taking the course. It will be much cheaper in the long run. That is what Dennis did. We are not a roof membrane so we don't like to coat directly to plywood. We have done so but we can't give a warranty when we do. I will be in NY next week and we should meet. Thx Jeff
> ------Original Message------
> From: Pete Engelmann
> To: Jeffrey Cooper
> Subject: Infra red camera
> Sent: Jan 30, 2013 2:48 PM
>
> Jeff,
> Hope your feeling better.
>
> We need infra red imaging performed at several locations. I'm researching the cost of purchase. Can you advise? We also need a reference on who you recommend we can sub the infrared work to.
>
> I also have a town golf cart garage who want to apply Epox z directly to plywood or a covering cheaper than epdm. Any thoughts?
>
> Thanks,
> Pete
>
>
>
> Sent from my iPad
>
>
> Sent on the Sprint® Now Network from my BlackBerry®

_____ Information from ESET NOD32 Antivirus, version of virus signature database 7952 (20130131) _____

The message was checked by ESET NOD32 Antivirus.

http://www.eset.com

_____ Information from ESET NOD32 Antivirus, version of virus signature database 9345 (20140127)

1

Westchester 202

The message was checked by ESET NOD32 Antivirus.

http://www.eset.com

_____ Information from ESET NOD32 Antivirus, version of virus signature database 9658 (20140410) _____

The message was checked by ESET NOD32 Antivirus.

http://www.eset.com

Westchester 203

# EXHIBIT D

## Jeff Cooper

| | |
|---|---|
| **From:** | Peter Engelmann <pengelmann@ecgoa.com> |
| **Sent:** | Monday, March 25, 2013 9:46 PM |
| **To:** | Jeff Cooper |
| **Subject:** | Inspections |

Jeff,
I am sending this email as a follow up to the conversation you had with Howard today.

We have inspected and estimated many roofs over this winter. It was my understanding that we were clear to do so. I know we need to be trained as applicators to be certified which will be accomplished at Big Geyser.

How does the sale model layout in your experience? I'm not sure how to meet with a customer, inspect a roof and not have to waste your time, every time. I also don't want to overwhelm them with too many people on sales call. Can we sell based on manufacturer approval? Before or after deposit and contract?

Please advise...

Regards,
Pete

Sent from my iPad
_____ Information from ESET NOD32 Antivirus, version of virus signature database 8161 (20130325) _____

The message was checked by ESET NOD32 Antivirus.

http://www.eset.com

_____ Information from ESET NOD32 Antivirus, version of virus signature database 9345 (20140127)
_____

The message was checked by ESET NOD32 Antivirus.

http://www.eset.com

_____ Information from ESET NOD32 Antivirus, version of virus signature database 9421 (20140213)
_____

The message was checked by ESET NOD32 Antivirus.

http://www.eset.com

1

**Jeff Cooper**

| | |
|---|---|
| **From:** | Howard Ehrenshaft <hehrenshaft@ecgoa.com> |
| **Sent:** | Wednesday, April 10, 2013 7:40 PM |
| **To:** | Jeffrey Cooper |
| **Cc:** | Pete Engelmann |
| **Subject:** | Re: Application for credit |

Jeff:

As discussed how about an EPOX-Z line of credit from GAF. You. Surely have been around much longer then us and have good credit references.

Howard
Howard Ehrenshaft


Sent from my iPad

On Apr 10, 2013, at 7:10 PM, "Jeffrey Cooper" <jeff@epox-z.com> wrote:

> Hi Howard,
>
> Can you please fill out the top section of this form and send to me. I am trying to put it through my bank and factor it. The material cost will be about $190K. I have no credit with GAF so I need to be able to factor the invoice to pay them. When the solution was NRG I did not have a cash flow problem as I can work with my factory. Since this is not going through my factory I do not have any way to pay for the material unless I can factor. Pete, do you have any entity left with good credit that has been in business for a period of time that I can use as the purchaser to factor this receivable? ECGOA may be too new an entity to get factored.
> Thanks
> Jeff
>
> Jeffrey S. Cooper
> Chief Operating Officer
> Chief Financial Officer
> jeff@epox-z.com
> Cell: 781-799-6713
>
> <image001.jpg>
>
> **EPOX-Z Corporation**
>
> *82 Bowker Street*
> *Norwell, MA 02061credit from*
> *Tel: 781-561-7227*
> *Fax: 781-659-7688*
> *www.epox-z.com*

1

Westchester 205

_____ Information from ESET NOD32 Antivirus, version of virus signature database 8215 (20130410) _____

The message was checked by ESET NOD32 Antivirus.

http://www.eset.com
<TRE Seller Initial Auction Check ListDOC.doc>


_____ Information from ESET NOD32 Antivirus, version of virus signature database 8215 (20130410) _____

The message was checked by ESET NOD32 Antivirus.

http://www.eset.com


_____ Information from ESET NOD32 Antivirus, version of virus signature database 9831 (20140521) _____

The message was checked by ESET NOD32 Antivirus.

http://www.eset.com


_____ Information from ESET NOD32 Antivirus, version of virus signature database 10230 (20140809) _____

The message was checked by ESET NOD32 Antivirus.

http://www.eset.com

2

Westchester 206

# EXHIBIT E

3475284237
Sent on the Sprint® Now Network from my BlackBerry®

---

**From:** Brad Johnston <bjohnston@receivablesxchange.com>
**Date:** Mon, 6 May 2013 17:46:08 +0000
**To:** jeff@epox-z.com<jeff@epox-z.com>
**Subject:** RE: Validation for ECGOA - ACTION NEEDED

No, apparently that number is no good.  Cell phone won't work either.  Do you have or can you get another number for them?

Thanks,
Brad


**Brad Johnston**

Director, Sales and Trading
(212) 867-3409 Trading Desk
(504) 264-5095 Direct
(646) 342-7511 Mobile
bjohnston@receivablesXchange.com

437 Madison Avenue
28th Floor
New York, NY 10022
www.receivablesXchange.com

---

**From:** jeff@epox-z.com [jeff@epox-z.com]
**Sent:** Monday, May 06, 2013 1:42 PM
**To:** Brad Johnston
**Subject:** Re: Validation for ECGOA - ACTION NEEDED

I normally use Howard Ehrenshaft's cell. Does the 800 number not work?
Sent on the Sprint® Now Network from my BlackBerry®

---

**From:** Brad Johnston <bjohnston@receivablesxchange.com>
**Date:** Mon, 6 May 2013 17:33:05 +0000
**To:** jeff@epox-z.com<jeff@epox-z.com>
**Subject:** FW: Validation for ECGOA - ACTION NEEDED

Jeff,

Do you have a main phone number you can provide me with?

Thanks,
Brad


**Brad Johnston**

Director, Sales and Trading
(212) 867-3409 Trading Desk
(504) 264-5095 Direct

3

(646) 342-7511 Mobile
bjohnston@receivablesXchange.com

437 Madison Avenue
28th Floor
New York, NY 10022
www.receivablesXchange.com

---

**From:** Ryan Gilmore
**Sent:** Monday, May 06, 2013 1:31 PM
**To:** AD Validation
**Cc:** Brad Johnston
**Subject:** RE: Validation for ECGOA - ACTION NEEDED

The phone number provided for Energy Conservation Group Of America Inc. could not be validated. Please have the Seller provide the main business phone number.

Thanks,

**Ryan Gilmore**
**Registrations Analyst**
Phone: (504) 208-1967
Fax: (504)264-5176
rgilmore@receivablesxchange.com

935 Gravier St, Flr 12
New Orleans, LA 70112
www.receivablesXchange.com

<image002.png>

---

**From:** Brad Johnston
**Sent:** Monday, May 06, 2013 8:15 AM
**To:** AD Validation
**Subject:** Validation for ECGOA

Please validate new AD for Epox-Z Energy Conservation Groupf of America (ECGOA).  This is a pre-validation for this seller.  They have been added to the platform.  Send any questions my way.

Thanks,
Brad

**Brad Johnston**

Director, Sales and Trading
(212) 867-3409 Trading Desk
(504) 264-5095 Direct
(646) 342-7511 Mobile
bjohnston@receivablesXchange.com

437 Madison Avenue
28th Floor
New York, NY 10022
www.receivablesXchange.com

4

_____ Information from ESET NOD32 Antivirus, version of virus signature database 8313 (20130509) _____

The message was checked by ESET NOD32 Antivirus.

http://www.eset.com


_____ Information from ESET NOD32 Antivirus, version of virus signature database 9831 (20140521) _____

The message was checked by ESET NOD32 Antivirus.

http://www.eset.com


_____ Information from ESET NOD32 Antivirus, version of virus signature database 10230 (20140809) _____

The message was checked by ESET NOD32 Antivirus.

http://www.eset.com

5

Westchester 209

# EXHIBIT F

Phone: 800-662-6307
Cell: 347-528-4237
Fax: 631-593-5466
Email: hhrenshaft@ecgoa.com
www.ecgoa.com

**From:** Jeffrey Cooper [mailto:jeff@epox-z.com]
**Sent:** Wednesday, January 16, 2013 11:34 AM
**To:** hehrenshaft@ecgoa.com
**Subject:** RE: Warantee

He is somewhat accurate on his assessment. If the material fails because of structural issues, we donâ€™t warrant that as he correctly points out. We donâ€™t cover a substrate failure. He is incorrect in that it covers both material and labor. It is limited though to the cost of the material. For example, lets say you paid $76,000 for the material only and you have a problem that cost $75,000 to fix. That $75,000 consists of $37,500 in material $37,500 in labor. We would cover both the labor and material since it less than the $76,000 cost of the material. In other words, our liability is up the cost of the material but it includes labor and material up to that dollar amount.

Jeffrey S. Cooper
Chief Operating Officer
Chief Financial Officer
jeff@epox-z.com
Cell: 781-799-6713



**EPOX-Z Corporation**

*82 Bowker Street*
*Norwell, MA 02061*
*Tel: 781-561-7227*
*Fax: 781-659-7688*
*www.epox-z.com*

**From:** Howard Ehrenshaft [mailto:hehrenshaft@ecgoa.com]
**Sent:** Wednesday, January 16, 2013 11:13 AM
**To:** jeff@epox-z.com
**Subject:** FW: Warantee

Jeff:

Please c0mment on below comments on the warrantee.  Call if you have any questions.

Howard

Howard Ehrenshaft
The Energy Conservation Group of America
345 Fort Saonga Road, Northport, NY 11768
Phone: 800-662-6307
Cell: 347-528-4237
Fax: 631-593-5466

Westchester 211